IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| ALFA CORPORATION, etc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:05cv110-T |
| ALFAGRES, S.A., etc., | ) | (WO) |
| | ) | |
| Defendant. | ) | |

### ORDER

Plaintiff Alfa Corporation, a Delaware corporation with its principal place of business in Montgomery, Alabama, brings this lawsuit against defendant Alfagres, S.A., a Colombian business, asserting violations of the U.S. Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C.A. § 114(1), known as the "Lanham Act."  Now before the court is Alfagres's motion to quash service of process and alternative motion to dismiss for lack of personal jurisdiction and insufficient service of process.  For the reasons that follow, the motions will be denied.

## I. Background

According to its complaint, Alfa is a financial services conglomerate that operates through a number of wholly owned subsidiaries, divisions, and related companies; it provides realty and construction services through Alfa Realty, Inc., Alfa Properties, Inc., and Alfa Builders, Inc.; and it is publicly traded on the NASDAQ stock exchange under the symbol "ALFA."[1] In its complaint, Alfa alleges that it has acquired common-law trademark rights to the name "Alfa" throughout the United States, including within the States of Alabama and Florida.[2] In addition, Alfa holds a number of federally registered trademarks incorporating the word "Alfa," such as "Alfa Builders" and "Alfa Realty."[3]

Alfagres is a Colombian tile manufacturer that markets and sells its products worldwide, including in the United States.  Its brochures and website indicate that "Alfagres

---

1.   Complaint (Doc. No. 1), p. 2-3.

2.   <u>Id</u>. at 3.

3.   <u>Id</u>.

2

handles all the orders for North America, The Caribbean [sic], Europe, Asia and the Pacific from their office in Miami, USA."[4] In these materials, the address for Alfagres's Miami "office" is listed as 7122 N.W. 50th Street, Miami, Florida, 33166.

Alfa also contends that Alfagres maintains a sales office at this Miami location. An investigator for Alfa visited the Miami address listed on Alfagres's website and was provided marketing and promotional materials, product samples, and other information about Alfagres. In addition, he was greeted by several personnel who identified themselves as employees of Alfagres.[5] Photographs taken by

---

4. Opposition to defendant's motion to quash (Doc. No. 11), Exs. 1-6. Alfa has submitted numerous exhibits including Alfagres's marketing and promotional materials, brochures, and catalogues. In all of these materials, a Miami address and phone number, along with an American email address, alfagres@bellsouth.net, are listed as a means of contacting the company.

5. Id., Declaration of Colin R.B.L. Phipps, p. 2.

the investigator indicate that the name "Alfagres" is displayed outside the Miami office building.[6]

Despite this evidence, including the fact that its brochures and promotional materials list the Miami address as its American office, Alfagres now contends that it does not actually maintain a business office in the United States, and that the Miami address is in fact the location of OPA International Corporation, the American distributor of Alfagres products. It states that mail sent to this Miami address is forwarded to Alfagres's headquarters in Colombia, and is thus in reality only a "mail drop." Alfagres states that it "sells product[s] to this distributor, and the distributor resells the product in the United States." Alfagres admits that it allows the distributor to use the name "Alfagres" at its location, and also allows it to distribute Alfagres marketing information. However, it contends that the distributor is "a separate

_____

6.    Plaintiff's memorandum of law in opposition to defendant's motion to quash (Doc. No. 12), p. 2.

4

legal corporation, and is not authorized to receive service of process for Alfagres."[7]

Though the function of this Miami address is hotly contested, the parties do not dispute that Alfagres does not own or lease any real estate in the State of Alabama, has no employees in Alabama, does not pay Alabama taxes, and does not contract or conduct business with any entity or customer located in Alabama.[8] Alfagres does not actively advertise or solicit business in Alabama. Its website, www.alfagres.com, can be accessed by computers anywhere in the world, including from computers in Alabama, although no orders can be placed through the website.[9]

Alfa alleges that Alfagres uses the name and mark "Alfa" in connection with offering building and construction

_____

7. Supplemental brief in support of defendant's motion to quash (Doc. No. 10), pp. 1-2.

8. Defendant's motion to quash service of process (Doc. No. 7), Ex. A, Declaration of German Eduardo Ramirez Dallos; Memorandum in support of defendant's motion to quash (Doc. No. 8), pp. 2-3.

9. Id.

services and products in a way that is confusing to customers and detrimental to Alfa.  It further states that, when Alfagres sought to register the designation "Alfa" with the United States Patent and Trademark Office, it sent Alfagres a letter demanding that it withdraw its trademark applications and cease and desist from all use of the name "Alfa" in connection with its services and products, but that Alfagres refused to respond and continued to use the "Alfa" trademark.[10]  The Patent and Trademark Office subsequently denied Alfagres's trademark applications based on Alfa's senior registered marks.[11]

Alfa filed this suit in the Middle District of Alabama in February 2005, alleging various trademark infringement claims.  Upon the filing of the complaint, a summons and complaint were sent by the clerk of the court, via certified mail, to the above-referenced Miami address.  An individual named Alba Montallana signed for the return receipt, which

---

10.  Complaint (Doc. No. 1), p. 5.

11.  Id.

was then filed with the court.[12]   Several weeks later, Alfagres filed the motions now before the court, contending that Montallana was neither an employee nor an agent authorized to receive service of process on behalf of Alfagres and that, therefore, service had not been executed pursuant to Fed.R.Civ.P. 4(h) & (f); in the alternative, Alfagres asks that this lawsuit be dismissed for lack of personal jurisdiction and insufficient service of process.[13]

## II. Fed.R.Civ.P. 12(b)(2) Motion to Dismiss

Before addressing the issue of service of process, the court will first address the threshold issue of whether it has personal jurisdiction over Alfagres.  See Fed.R.Civ.P. 12(b)(2) ("jurisdiction over the person").

---

12.  Alfa states that Montallana previously held herself out to its investigator as an attorney for and employee of Alfagres.  Plaintiff's memorandum of law in opposition to defendant's motion to quash service (Doc. No. 12), p. 2.

13.  Defendant's motion to quash (Doc. No. 7), p. 2.

7

Alfa presents two alternative arguments in support of its contention that this court has personal jurisdiction over Alfagres.  First, it argues that this court has specific jurisdiction over Alfagres pursuant to the "effects" test established in <u>Calder v. Jones</u>, 465 U.S. 783, 104 S.Ct. 1482 (1984), because Alfagres intentionally committed trademark infringement against Alpha, knowing that the effect of these actions would primarily be felt in Alabama.  Second and in the alternative, Alfa argues that this court has personal jurisdiction over Alfagres pursuant to the Fed.R.Civ.P. 4(k)(2) "national contacts" test. Because the court concludes that it has specific jurisdiction over Alfagres pursuant to the <u>Calder</u> "effects" test, it need not reach Alfa's Rule 4(k)(2) argument.

## A. Standard

In the context of a motion to dismiss in which no evidentiary hearing is held, a plaintiff need establish only a prima-facie case of jurisdiction.  <u>Madara v. Hall</u>, 916

F.2d 1510, 1514 (11th Cir.1990).  "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits."  Id. at 1514.  Where the parties' allegations conflict, all pleadings and affidavits introducing evidence relating to jurisdictional facts are to be construed in the light most favorable to the plaintiff.  Mutual Service Ins. Co. v. Frit Industries, Inc., 358 F.3d 1312, 1319 n.6 (11th Cir. 2004).


## B. Discussion

When a defendant challenges personal jurisdiction, the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with (1) the forum State's long-arm provision and (2) the requirements of the due-process clause of the Fourteenth Amendment to the United States Constitution.  Oliver v. Merritt Dredging Co., 979 F.2d 827, 830 (11th Cir. 1992), cert. denied, 507 U.S. 983, 113 S. Ct. 1577 (1993).

Because Alabama's long-arm provision, Ala.R.Civ.P. 4.2(a), authorizes the assertion of personal jurisdiction to the limits of the United States Constitution, a plaintiff may carry both of these burdens by demonstrating that personal jurisdiction over the defendant meets the requirements of federal due process. Id. Due process requires, first, that the defendant have "certain minimum contacts" with the forum State and, second, that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." Burnham v. Superior Court of California, County of Marin, 495 U.S. 604, 618, 110 S. Ct. 2105, 2114-15 (1990) (quoting International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)); see also SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997).

### i. Minimum Contacts

To constitute minimum contacts for purposes of specific jurisdiction, the defendant's contacts with the applicable forum must satisfy three criteria: first, the contacts must be related to the plaintiff's cause of action or have given rise to it; second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and, third, the contacts must be such that the defendant should reasonably anticipate being haled into court in the forum. <u>Carillo</u>, 115 F.3d at 1542.

Given the fact that a defendant might reasonably anticipate suit in a specific State for a variety of reasons, the minimum contacts standard is often more easily articulated than applied. However, the Supreme Court has specifically distinguished between negligent and intentional actions, holding that the latter indicate that "the defendant may be held to have expected its conduct to have an effect in that state, and further to have expected that

the victim will bring suit for redress there." <u>Coblenz v.</u>
<u>General Motors Corp.</u>, 724 F.Supp. 1364 (M.D. Ala. 1989)
(Thompson, J.). Thus, relying on <u>Calder v. Jones</u>, 465 U.S.
783, 104 S.Ct. 1482 (1984), this court previously stated
that,

> "when the origin of a deliberate,
> nonfortuitous tort is in one state, and
> the intended injury to a recognized victim
> is in another state, the tortfeasor has
> affirmatively established minimum contacts
> with the state in which the injury
> occurred, if the tortfeasor knew at the
> time it committed the alleged tort that
> the victim would be injured in that
> state."

<u>Coblenz</u>, 724 F.Supp. at 1369 (citing <u>Calder</u>, 465 U.S. at
790, 104 S.Ct. at 1487); <u>see also</u> <u>Burger King v. Rudzewicz</u>,
471 U.S. 462, 472, 105 S.Ct. 2174 (1985); <u>Asahi Metal</u>
<u>Industry Co. v. Superior Court</u>, 480 U.S. 102, 107 S. Ct.
1026, 1033 (1987) ("'substantial connection' ... between the
defendant and the forum State necessary for a finding of
minimum contacts must come about by <u>an action of the</u>
<u>defendant purposefully directed toward the forum State</u>")
(citations omitted) (emphasis in original).

12

Several courts have applied <u>Calder</u> to trademark infringement disputes, holding that the use of a trademark with knowledge of the infringement constitutes intentional tortious wrongdoing such that the alleged infringer could reasonably anticipate being haled into court in the state where the effects of the infringement are felt.   For example, in <u>Indianapolis Colts, Inc. v. Metro. Baltimore Football Club</u>, 34 F.3d 410, 412 (7th Cir. 1994), the Seventh Circuit held that the Maryland-based defendant could reasonably expect to be haled into court in Indiana because it knew that the effects of its alleged trademark infringement would be felt primarily in Indiana.   The trademark dispute arose after the owner of the Baltimore Colts secretly and suddenly moved his team to Indianapolis in 1984, a decision that outraged the citizens of Baltimore. 34 F.3d at 411.   Nine years later, the defendant, a franchise of the Canadian Football League, established a new football team in Baltimore named the "Baltimore CFL Colts." <u>Id</u>.  The Indianapolis Colts subsequently brought suit for

trademark infringement in Indiana against the Baltimore franchise.  Given that the defendant was clearly aware of the Indianapolis Colts' existence, the court held that "by choosing a name that might be found to be confusingly similar to that of the Indianapolis Colts, the defendants assumed the risk of injuring valuable property located in Indiana."  <u>Id</u>.

Similarly, in <u>Dakota Industries, Inc. v. Dakota Sportswear, Inc.</u>, 946 F.2d 1384, 1391 (8th Cir. 1991), the Eighth Circuit held that the defendant, a California corporation, had established minimum contacts with the State of South Dakota, where the South Dakota-based plaintiff alleged that the defendant had intentionally committed trademark infringement.  The defendant continued to use the plaintiff's trademark after it had twice been rejected in its attempts to register the trademark "Dakota," and had received a "cease and desist" letter from the plaintiff demanding that it stop using the "Dakota" trademark.  These facts played a significant role in the court's conclusion

**14**

that the defendant knew it was likely infringing upon the
plaintiff's trademark and therefore "must reasonably
anticipate being haled into court in South Dakota."   946
F.2d at 1391.  <u>See</u> <u>also</u> <u>Bancroft & Masters, Inc. v. Augusta</u>
<u>National, Inc.</u>, 223 F.3d 1082, 1087 (9th Cir. 2000)
(Georgia-based corporate defendant established minimum
contacts with California where it knew of and individually
targeted California-based plaintiff in trademark dispute);
<u>Panavision International, L.P. v. Toeppen</u>, 141 F.3d 1316
(9th Cir. 1998).

In this case, Alfa alleges that Alfagres intentionally
committed tortious conduct by continuing to use the name
"Alfa" in connection with its services and products even
after (1) Alfa demanded that Alfagres withdraw its trademark
applications with the Patent and Trademark Office and cease
and desist from all use of the name "Alfa," and (2)
Alfagres's trademark application was rejected due to Alfa's
senior registered marks.[14]  Taken as true, the facts alleged

---

14.    Complaint (Doc. No. 1), p. 5; plaintiff's
(continued...)

in the complaint clearly indicate that Alfagres <u>knew</u> it was likely committing trademark infringement specifically against Alfa in Alabama and continued to do so anyway. Because it could anticipate that the primary effects of its wrongful conduct would be felt in Alabama, Alfagres could reasonably have expected that Alpha would bring suit here, even given Alfagres's lack of other contacts with Alabama. <u>Calder</u>, 465 U.S. at 790, 104 S.Ct. at 1487 ("An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California").

For the above reasons, the three criteria necessary to satisfy minimum contacts are satisfied here.

### ii. Fair play and substantial justice

As for the second aspect of jurisdictional due process, the court also concludes that its exercise of jurisdiction

---

14.   (...continued)
memorandum of law in opposition to defendant's motion to quash (Doc. No. 12), p. 15.

over Alfagres complies with traditional notions of fair play

and substantial justice.   As this court has previously

noted,

> "[I]n the typical intentional tort case,
> it is both fair and just to allow the
> victim of an alleged tort to call the
> tortfeasor to account in the victim's home
> forum.   A contrary result would force
> injured parties to go to the alleged
> tortfeasor for redress even though, taking
> the victim's position as justified at the
> institution of suit, the tortfeasor has
> knowingly brought about the situation
> through its actions."

Coblentz, 724 F.Supp. at 1371 (citing Burger King, 471 U.S.

at 474-76, 105 S.Ct. at 2183-84).   Therefore, given that

Alfa  has  alleged  intentional  trademark  infringement,

Alfagres must present a "compelling case" that other factors

render this court's exercise of jurisdiction offensive to

fair play and substantial justice, notwithstanding minimum

contacts.   Id.   Alfagres has failed to do so.

In evaluating whether the exercise of jurisdiction

comports with fair play and substantial justice, the court

must consider such factors as (1) the burden on the

17

defendant, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies.  <u>Burger King</u>, 471 U.S. at 477, 105 S.Ct. at 2184.

Alfagres's primary argument that the court's exercise of personal jurisdiction would offend notions of fair play and substantial justice is that it would be highly inconvenient for it to litigate this dispute in Alabama.  It points out that "Alfagres has no contact with the State of Alabama" and that "All of their resources, employees, officers, directors, and facilities, are located in Bogota, Colombia."[15]  It then argues that Alfa should have filed suit in a State where it does have some contact, such as Florida.

---

15. Defendant's memorandum in support of motion to quash (Doc. No. 8), p. 11.

18

The fact that Alfagres is a foreign corporation whose headquarters are in Bogota, Colombia does nothing to persuade the court that it would be unfair for it to exercise personal jurisdiction in this case.  Holding otherwise would be tantamount to allowing foreign corporations to evade the consequences of committing intentionally wrongful acts in this jurisdiction. Furthermore, Alfagres's argument that Alfa should have brought suit in Florida, where it has "some contact," is also to no avail.  Elsewhere in its briefs, Alfagres argues that the Miami address listed in its promotional materials is nothing but a "mail drop" for its Colombian office. Though the court views this argument with suspicion, this statement, if taken as true, implies that it would be no more convenient for Alfagres to defend this action in the Southern District of Florida than it would be in the Middle District of Alabama.

Put simply, while defending this action will necessarily impose burdens upon Alfagres, it is also clear that Alfagres

was aware of the potential conflict it was creating with Alfa by its continued use of the "Alfa" trademark. Therefore, Alfagres could and should have anticipated the burden of litigating a trademark infringement dispute in Alabama.

Finally, the court's interest in the efficient resolution of this dispute as well as Alfa's interest in obtaining convenient and effective relief both weigh in favor of the court's exercise of jurisdiction over Alfagres.


### III. Motions Related to Service of Process

Because the court finds that it has personal jurisdiction over Alfagres, it must reach Alfagres's argument that service of process is defective and should be quashed or, alternatively, that the action should be dismissed pursuant to Fed.R.Civ.P. 12(b)(5) ("insufficiency of service of process"). The court finds that this argument also fails.

### A. Rules

Fed.R.Civ.P. 4(h) governs service of process upon corporations and associations.  Rule 4(h)(1) states, in relevant part, that, "[u]nless otherwise provided by federal law, service upon a domestic or foreign corporation ... shall be effected ... in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1)."  Fed.R.Civ.P. 4(e)(1), in turn, directs that service upon individuals can be effected "pursuant to the law of the state in which the district court is located."  The court thus turns to the Alabama law.

Ala.R.Civ.P. 4(i)(2) provides for service of process by certified mail.  Rule 4(i)(2)(B) states that "in the case of an entity within the scope of one of the subdivisions of Rule 4(c), the addressee shall be a person described in the appropriate subdivision."  Rule 4(c)(6) dictates that service upon a foreign corporation may be effected through service upon "a managing or general agent, or any agent authorized by appointment or by law to receive service of

process."  Thus, when attempting to serve a corporation by
certified mail, the summons and complaint must be addressed
to either "a managing or general agent," or "any agent
authorized by appointment or by law to receive service of
process," pursuant to Rule 4(c)(6).

Rule 4(i)(2)(C) further provides that,

> "Service by certified mail shall be deemed
> complete and the time for answering shall
> run from the date of delivery to the named
> addressee  or  addressee's  agent  as
> evidenced  by  signature  on  the  return
> receipt.   Within  the  meaning  of  this
> subdivision, 'agent' means a person or
> entity  specifically  authorized  by  the
> addressee to receive the addressee's mail
> and to deliver that mail to the addressee.
> Such  agent's  authority  shall  be
> conclusively  established  when  the
> addressee acknowledges actual receipt of
> the  summons  and  complaint  or  the  court
> determines  that  the  evidence  proves  the
> addressee did actually receive the summons
> and complaint in time to avoid a default."

### B. Discussion

In  this  case,  the  summons  and  complaint,  addressed
simply to "Alfagres, S.A.," were sent by certified mail on

February 9, 2005, to the address listed as the company's
"Miami office" in Alfagres's promotional and marketing
materials.   A woman named Alba Montallana, who had
previously held herself out as an employee of Alfagres,[16]
signed the return certificate on February 11, 2005.   The
certificate was filed in this court on February 16, 2005.
Although Alfagres did not file an answer within 20 days, as
prescribed by Fed.R.Civ.P. 12(a),[17] it filed this motion to
quash service of process on March 14, 2005.   Attached to the
motion is an exhibit entitled "Declaration of German Eduardo
Ramirez Dallos," the legal representative of Alfagres, which
is dated March 11, 2005.

   The court finds that service of process in this case was
in substantial compliance with the Federal and Alabama Rules
of Civil Procedure and that any defects in service of

---

   16.   Plaintiff's memorandum of law in opposition to
defendant's motion to quash service (Doc. No. 12), p. 2.

   17.   Fed. R. Civ. P. 12(a)(1)(A) states that unless a
different time is prescribed in a statute of the United
States, a defendant shall serve an answer "within 20 days
after being served with the summons and complaint."   The
deadline for Alfagres to file an answer was March 3, 2005.

23

process have not prejudiced Alfagres and are therefore harmless error.   See, e.g., Sanderford v. Prudential Insurance Co., 902 F.2d 897, 900 (11th Cir. 1990) ("Fed.R.Civ.P. 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint") (quoting United Food & Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984)); Thomas v. Yonkers Police Dept., 147 F.R.D. 77 (S.D.N.Y. 1993) (Broderick, J.).

Although the summons and complaint were addressed to the corporation itself, rather than to a specified person (i.e. an officer, partner, or authorized agent of the corporation described in Ala.R.Civ.P. 4(c)(6)), as required by Ala.R.Civ.P. 4(i)(2)(B), service of the summons and complaint clearly complied with all other aspects of Rule 4(i)(2) and reached the appropriate persons within Alfagres, as evidenced by the fact that Alfagres filed its motion to quash on March 14, 2005.   See United Food & Commercial Workers Union, 736 F.2d at 1382 ("[A] defendant's ...

24

appearance in an action should be enough to prevent any technical error in form from invalidating the process") (internal citations and quotations omitted).

Alfagres's argument that Montallana is not an agent authorized to receive service of process on its behalf is also to no avail. According to Ala.R.Civ.P. 4(i)(2)(C), the "person or entity" who signs the return receipt need only be an "agent" authorized to receive and deliver mail to the addressee and need <u>not</u> be the actual person authorized to receive process under Rule 4(c)(6). Throughout its briefs and pleadings, Alfagres has repeatedly insisted that the Miami address to which the summons and complaint was sent is actually the address of OPA International Corporation, Alfagres's American distributor, and is for all practical purposes simply a mail drop "from which mail is forwarded to Alfagres at its Bogota, Colombia office."[18] Given Alfagres's clear admission that mail sent to the Miami address is forwarded to Alfagres, the court finds that Montallana's

_____

18. Memorandum in support of defendant's motion to quash (Doc. No. 8), pp. 2-3.

signature was sufficient to comply with the requirements of Ala.R.Civ.P. 4(i)(2)(C); regardless of whether Montallana was in fact an employee of Alfagres or of OPA International, her presence at the office and receipt of the mail indicates that she was clearly part of the entity authorized to forward mail to Alfagres at its Colombian headquarters.

Moreover, while it is unclear exactly <u>when</u> Alfagres received the summons and complaint in Colombia, nowhere in the record does it dispute eventually receiving the summons and complaint.  In fact, the record indicates that Alfagres received actual notice of Alfa's claim against it no later than March 11, 2005, the date on which Dallos signed the affidavit attached to Alfagres's motion to quash.  Given that "the modern conception of service of process is primarily as a notice giving device," <u>Andrews v. Coffee County Bd. of Educ.</u>, WL 214509, *7 (M.D. Ala., 1988) (Dubina, J.) (quoting Wright & Miller, <u>Federal Practice and Procedure</u>, Civil 2d § 1083), "to quash service at this juncture would simply serve to increase the costs of service

and delay the proceedings." <u>Coca-Cola Co. v. Empresa</u> <u>Comercial Int'l de Frutas S.A.</u>, 1996 WL 378856, *2 (M.D. Fla. 1996) (Kovachevich, J.).

However, the court is mindful that it is possible there was some delay in the forwarding of the summons and complaint from the Miami address to Alfagres's Colombian headquarters.  Therefore, to ensure there is no prejudice to Alfagres, the court will allow it 20 days from the date of the issuance of this order to file another response to the complaint.

For the forgoing reasons, it is ORDERED as follows:

(1) Defendant Alfagres, S.A.'s motion to quash service of process and alternative motion to dismiss for lack of personal jurisdiction and insufficient service of process (Doc. No. 7) are denied.

(2) Defendant Alfagres, S.A. is allowed until September 19, 2005, to file a further response to the complaint.

Done, this the 30th day of August, 2005.


                    /s/ Myron H. Thompson
              UNITED STATES DISTRICT JUDGE